Judgment rendered July 15, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,927-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

JACOB PARKER                                    Plaintiff-Appellee

versus

CODY JOHNS                                      Defendant-Appellant

* * * * *

Appealed from the
Eighth Judicial District Court for the
Parish of Winn, Louisiana
Trial Court No. 48,030

Honorable Anastasia Stacy Wiley, Judge

* * * * *

CULPEPPER & CARROLL                             Counsel for Appellant
By:  J. Clay Carroll

KELLY & TOWNSEND, LLC                           Counsel for Appellee
By:  Keenan K. Kelly

* * * * *

Before STEPHENS, HUNTER, and MARCOTTE, JJ.

**STEPHENS, J.,**

The defendant appeals a preliminary injunction enjoining the parties from selling, transferring, or disposing of livestock allegedly co-owned by the parties. For the following reasons, we reverse the judgment of the trial court and remand for further proceedings.

### FACTS AND PROCEDURAL HISTORY

On August 11, 2025, Jacob Parker filed a petition for damages, partition of movable property, and injunctive relief, against Cody Johns relative to the purchase and ownership of livestock. The petition alleged that Parker and Johns jointly purchased 67 cows and one Charolais bull. Following the sale of some of the livestock, Parker claimed that he and Johns are now equal owners in indivision of 41 cows, 12 calves, and one Charolais bull. However, the petition alleged that Johns sought to defraud Parker of his ownership of the livestock by creating Cruie Creek Land & Cattle Company LLC, in which Johns is the sole member. Johns disputes Parker's ownership of the livestock. Parker sought an order restraining the parties from selling the livestock pending resolution of this dispute.

The hearing on the request for injunctive relief was held on October 10, 2025. Parker testified as to the following facts regarding the partnership and acquisition of the livestock: Parker and Johns entered into a "handshake agreement" to purchase cattle together. On February 16, 2024, Parker and Johns purchased 67 cows and one Charolais bull from Rodney Sklar for $70,750. Johns obtained a Farmer Service Agency ("FSA") loan, in his name only, for $50,000, and used his personal funds to pay the balance of the purchase price. Parker admitted that he did not provide funds to purchase the cattle, but maintained that his contribution to the partnership

was the use of his family's land for grazing the cattle and his knowledge and labor in feeding, doctoring, working, and transporting the cattle. Parker testified that the cows were branded with his brand, Cruie Creek Cattle, with no objection from Johns.

Parker and Johns initially sold 26 cows in two separate sales, with the understanding that the proceeds would be used to reimburse Johns for the money he advanced. Parker and Johns also leased a pasture, which they then subleased to others for grazing. The lease was in Johns' name, but Parker arranged the subleases and was responsible for tending to the cows. Parker never received any money from the leases. In a third sale, Parker and Johns sold 28 calves. Parker received $4,000 of the proceeds to reimburse him for hay he had purchased for the cows, and the remaining proceeds were used to pay for the pasture lease. At some point, the cattle were moved to the leased pasture.

In June 2025, Parker and Johns had a disagreement and Parker contacted the Louisiana Livestock Brand Commission. On June 20, 2025, the Commission placed a hold on the cattle (described as 41 cows, 12 calves, and one bull), thereby preventing the sale of the cattle. However, that hold was lifted via email to counsel for the parties on July 25, 2025. Parker then moved 19 cows back to his family's land but later returned the cows to the leased pasture at the request of the FSA. Thereafter, Johns sold six calves without permission or prior notification to Parker.

Rodney Sklar, Billy Thompson, and Tyler Meylian testified that they believed that Parker and Johns were partners in the cattle business based on various interactions with the pair. As further proof of the partnership, Parker introduced banking documents identifying both Parker and Johns as owners

of Cruie Creek Land & Cattle Company LLC and signatories on the checking account, as well as text messages between Parker and Johns regarding the purchase of a bull.

At the conclusion of the hearing, the trial court expressed concern that the cattle business is an ongoing concern and that any calves born are not yet branded. The trial court granted a preliminary injunction, enjoining the parties from selling, transferring, or disposing of the 41 remaining cows, all calves, current and future, and the Charolais bull absent agreement of the parties or court authorization. Johns now appeals.

## DISCUSSION

In his sole assignment of error, Johns asserts that the trial court abused its discretion in granting Parker's request for a preliminary injunction. Johns maintains that no irreparable injury exists and that Parker failed to prove any partnership agreement between himself and Johns regarding the cattle in question. Because the value of cattle is determined by the price received in the open market, Johns argues that Parker will have a remedy against him for monetary damages if he sells the cattle. Further, Johns notes that in the petition, as an alternative to the requested partition in kind, Parker requested partition by licitation or private sale, showing that any damages suffered can be measured in money.

Parker argues that the uncontradicted evidence presented at the hearing demonstrated a partnership between him and Johns and his ownership interest in the cattle. As to irreparable harm, Parker maintains that without a preliminary injunction, there would be no way for him to show with any degree of certainty if the offspring/calves from the 41 cows

3

and Charolais bull at issue were sold or for how much, making it impossible for him to prove the amount of damages.

A preliminary injunction "shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law[.]" La. C.C.P. art. 3601(A). The purpose of a preliminary injunction is to preserve status quo until trial on the merits. The only issue to be considered at a hearing on a preliminary injunction is whether the moving party has met its burden of proving that it will suffer irreparable injury, loss, or damage if the injunction is not issued, that it is entitled to the relief sought as a matter of law, and that it will likely prevail on the merits of the case. A preliminary injunction may be issued on a *prima facie* showing by the plaintiff that he is entitled to relief. *Conwill v. Cantrell*, 25-00941 (La. 7/30/25), 415 So. 3d 358.

The writ of injunction is an extraordinary remedy which should only issue in those instances where the moving party is threatened with irreparable loss or injury and is without an adequate remedy at law. *Terral v. AG Resource Holdings, LLC*, 54,156 (La. App. 2 Cir. 3/9/22), 335 So. 3d 1009. Irreparable injury is injury or loss for which damages cannot be measured by a pecuniary standard or adequately compensated in money damages. *ETC Texas Pipeline, Ltd. v. La. Energy Gateway, LLC*, 56,493 (La. App. 2 Cir. 10/1/25), 422 So. 3d 832. If, however, a monetary judgment would be valueless because of insolvency of the judgment debtor or other reasons, injunctive relief may be proper. *Council of City of New Orleans v. Edward Wisner Donation*, 22-0790 (La. App. 4 Cir. 10/24/24), 409 So. 3d 22, *writs denied*, 24-01428, 24-01431 (La. 2/19/25), 400 So. 3d 926, 931.

4

The grant or denial of a preliminary injunction is left to the sound discretion of the trial court and will not be disturbed on appeal except for a clear abuse of that discretion. *Chesapeake La., L.P. v. Bonchasse Land & Timber, LLC*, 56,287 (La. App. 2 Cir. 5/21/25), 413 So. 3d 546, *writ denied*, 25-00788 (La. 10/1/25), 417 So. 3d 573.

Based on the facts alleged in the petition and the evidence adduced at the hearing, we find that Parker failed to demonstrate irreparable injury sufficient to warrant injunctive relief. At the hearing, the only harm identified by Parker in argument was the uncertainty of being able to recuperate money if Johns sold the remaining cattle and filed for bankruptcy. However, no facts were presented as to Johns' financial situation and speculation as to his insolvency is insufficient to establish irreparable harm. There is no allegation that the cattle in question possess any unique qualities, thereby making them irreplaceable or their value unable to be measured by pecuniary standards. Therefore, any harm resulting from the sale of cattle can adequately be compensated in money damages based on the funds realized from the sale of the cattle. As no irreparable injury can be shown, the trial court abused its discretion in granting a preliminary injunction.

Because injunctive relief is inappropriate based on the failure to prove irreparable injury, we need not consider whether Parker made a *prima facie* showing that he would prevail on the merits of his claim.

### CONCLUSION

For the foregoing reasons, we reverse the trial court's judgment granting a preliminary injunction, vacate the preliminary injunction, and

remand the matter for further proceedings.  Costs of this appeal are assessed to Jacob Parker.

**REVERSED; VACATED AND REMANDED.**